**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 24-13121

Non-Argument Calendar

———————————————

WASEEM DAKER,

*Plaintiff-Appellant,*

*versus*

TIMOTHY WARD,

Commissioner, in individual and official capacities,

JACK KOON,

Facilities Director, in individual and official capacities,

STEVE UPON,

former Facilities Director, in individual and official capacities,

ROBERT TOOLE,

Field Operations Director, in individual and official capacities,

AHMAD HOLT,

Deputy Field Operations Director,
in individual and official capacities, et al.,

*Defendants-Appellees.*

—————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:22-cv-00036-JRH-BKE

—————————————

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Waseem Daker filed a pro se complaint challenging the conditions of his confinement. The district court imposed a permanent filing injunction that required Daker to post a $1,500 contempt bond and to include his full litigation history with every complaint or petition he filed in the future. When Daker didn't post the bond, the district court dismissed his complaint and denied a slew of other motions he had filed in the meantime, including a motion to modify the injunction. Daker appeals the imposition of the injunction, the dismissal of his complaint, and the denial of his post-judgment motions, including his motion to modify the injunction. After careful review, we affirm the imposition of the injunction and the dismissal of his complaint. But we reverse the denial of his motion to modify the injunction and remand for its consideration on the merits.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Daker is a Georgia state inmate serving life in prison. *See Daker v. State*, 300 Ga. 74, 74 n.1 (Ga. 2016). We've characterized him as a "'serial litigant who has clogged the federal courts with frivolous litigation' by 'submitting over a thousand pro se filings in

over a hundred actions and appeals in at least nine different federal courts.'" *Daker v. Jackson*, 942 F.3d 1252, 1255 (11th Cir. 2019) (quoting *Daker v. Comm'r, Ga. Dep't of Corr.*, 80 F.3d 1278, 1281 (11th Cir. 2016)). He's also a "three-strikes litigant" under the Prison Litigation Reform Act. *Id.; see* 28 U.S.C. § 1915(g). As a result of his prolific filing, before this litigation began, Daker was already subject to filing injunctions in other federal courts, including in the Supreme Court. *See, e.g.*, *Daker v. Toole*, 583 U.S. 805, 805 (2017) (noting that Daker "has repeatedly abused" the Supreme Court's process); Order of Permanent Injunction at 14–16, *Daker v. Ward*, No. 5:22-cv-340 (M.D. Ga. 2023) (requiring Daker to file a $1,500 contempt bond in connection with any future case filed in the Middle District of Georgia and to include a copy of the order and Daker's full litigation history "with every lawsuit he files *in this or any other federal court*"); Permanent Injunction at 19–20, *Daker v. Deal, et al.*, No. 1:18-cv-5243 (N.D. Ga. 2020) (imposing substantially similar injunction in the Northern District of Georgia); *Daker v. Governor of Ga.*, No. 20-13602, 2022 WL 1102015, at *1–2 (11th Cir. Apr. 13, 2022) (affirming the imposition of the injunction in the Northern District).

Daker filed this lawsuit alleging his confinement and treatment at Smith State Prison in Georgia violated the Constitution and federal law. His complaint did not comply with the injunctions against him in the Middle or Northern Districts of Georgia because it did not include or attach copies of the orders imposing those injunctions, nor did it include a full list of Daker's litigation history.

The magistrate judge who screened Daker's complaint recognized that it violated the injunction from the Northern District of Georgia. The magistrate judge attached a copy of the Northern District injunction and ordered Daker to "show cause within thirty days why filing restrictions should not be imposed in this case and all future filings in the Southern District of Georgia." The magistrate judge gave Daker thirty days to amend his complaint to comply with the Northern District injunction. Unless Daker showed cause, the magistrate judge warned he would recommend imposing the same injunction as the district court in the Northern District and dismissing Daker's case if he didn't post a $1,500 contempt bond.

Daker objected to the order to show cause. He argued that: (1) his litigation history in the Southern District of Georgia, including in this case, did not justify the injunction; and (2) the injunction would pose an "unreasonable and impossible burden on him" because he couldn't access all the records from his past litigation.

The magistrate judge recommended imposing the injunction and dismissing the case. As to whether Daker's conduct justified the injunction, the magistrate judge explained that Daker "continue[d] to overwhelm" the judicial system as a whole, citing our cases and those of district courts in this circuit that have recognized Daker's duplicative, abusive, and frivolous litigation. And the magistrate judge rejected the argument that the injunction posed an undue burden because we upheld the same litigation-history filing requirement when it was applied to Daker in the Northern District

of Georgia.  The magistrate judge also recommended dismissal for failure to "comply with the [prior] Order to submit an amended complaint" that included Daker's litigation history.

Daker did file an amended complaint, but he wrote that he couldn't remember all his federal cases (although he listed about three hundred pending or resolved cases in federal court).  The amended complaint was signed and dated before the magistrate judge entered his recommendation, but it was docketed afterwards.  Daker also objected to the magistrate judge's recommendation.  He repeated the same arguments from his objections to the original show-cause order.  He also argued that the magistrate judge was wrong that he hadn't filed an amended complaint because his amended complaint was timely under the prison mailbox rule.

On January 26, 2023, the district court partly adopted the magistrate judge's recommendation.  It permanently enjoined Daker "from filing any new lawsuit or petition in this [d]istrict without first posting a $1,500 contempt bond in addition to paying the required filing fee."  And it required Daker to include "with every complaint or petition he files in *this or any other federal court* (1) a copy of this order, and (2) a list of each and every lawsuit, habeas corpus petition, and appeal that he has filed in any federal court along with the final disposition of each."  Consistent with the magistrate judge's show-cause order and recommendation, the district court applied the contempt-bond requirement to this case.  It

gave Daker fourteen days to post the bond or have the case dismissed "without warning or comment." It denied without prejudice Daker's pending motions and warned that Daker was enjoined "from submitting any further filings in this case other than a motion for modification or a notice of appeal" until he posted the bond. "Any other motion" would be "summarily dismissed." When Daker didn't pay the contempt bond, the district court summarily dismissed the case in accordance with its order imposing the injunction.

But within the fourteen days, Daker moved to modify the injunction. The motion was signed and dated February 13 but docketed on March 2. It argued that lack of access to a copying machine made it impossible for Daker to comply with the requirement to include a copy of the injunction order with every future petition or complaint. Nor did he have the materials necessary to accurately list all his past lawsuits and petitions in future cases. Daker argued that the district court "abused its discretion by retroactively imposing" the contempt-bond requirement on this case. Finally, Daker contended the contempt bond was an "unreasonable financial burden" on him.

Next, Daker moved under Federal Rule of Civil Procedure 59(e) for reconsideration of the district court's order dismissing his complaint. He argued that the district court should vacate its order and consider his motion to modify the injunction, which he wrote was timely under the prison mailbox rule. And he again argued

that the district court abused its discretion by applying the contempt-bond requirement to this case, which was filed before the injunction was entered.

Daker then filed two motions for the district court to recuse itself from the case, and a supplemental motion to modify the filing injunction or for reconsideration. That last supplemental motion rehashed Daker's previous arguments against applying the injunction "retroactively," and that he couldn't pay the contempt bond.

The district court denied the motions to modify the injunction and to reconsider the judgment, and it denied as moot the motions for recusal. As to the motions to modify and reconsider its order dismissing the complaint, the district court treated them as post-judgment motions for reconsideration under Federal Rule of Civil Procedure 59(e). It concluded that Daker hadn't satisfied the high burden for relief under rule 59 because he hadn't shown any intervening change in law, new evidence, or clear error or manifest injustice. As to the motions for recusal, the district court observed that they "appear[ed] to apply to another of [Daker's] cases" and had been "filed here in error," so it directed the clerk to terminate the motions as moot.

## STANDARD OF REVIEW

We review for abuse of discretion a district court's imposition of a filing injunction. *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008).

## DISCUSSION

Daker appeals the imposition of the filing injunction, the dismissal of his complaint, and the denial of his modification motion, raising three issues.  First, the district court erred by applying the filing injunction "retroactively" to this case.  Second, the injunction was substantively flawed because it was overbroad.  And third, the district court abused its discretion by dismissing the case without first considering his timely motion to modify the injunction.[1]

### 1. *The district court did not abuse its discretion by applying the filing injunction to this case.*

Daker first argues that the district court abused its discretion by applying the contempt-bond requirement retroactively to cases that were filed before the injunction was imposed, including this one.  Specifically, he says the district court didn't give him notice and an opportunity to be heard on whether the injunction should apply to those cases.  And he contends that applying the requirement to this case violates the Due Process and Ex Post Facto Clauses, as well as the judicial doctrine against retrospective laws.

Daker is wrong about not having notice or being heard because the magistrate judge's show-cause order and recommendation both put Daker on notice that this case could be subject to the injunction.  The order to show cause instructed Daker to explain

---

[1] Daker also contends that the magistrate judge erred in recommending dismissal for failure to amend the complaint.  But, as he acknowledges, the district court didn't adopt that part of the magistrate judge's recommendation.

why the same injunction from the Northern District of Georgia "should not be also *imposed and then enforced in this case* and all other cases" he filed in the Southern District. And the magistrate judge recommended that the injunction "be imposed in the Southern District of Georgia and *enforced in the present case* and all future cases" Daker filed in the district. In response, Daker objected that "[e]ven if a filing injunction were appropriate . . . it should only apply *prospectively* to *future* cases filed, not *retroactively* to *past* cases already filed." He even quoted the language from the magistrate judge's show-cause order warning that the injunction could be applied to this case. His argument that applying the injunction to this case violated the Due Process Clause fails for the same reason. Daker had notice and the opportunity to be heard on the injunction's applicability to this case. *See Ashraf v. United States Drug Enf't Admin.*, 153 F.4th 1161, 1168 (11th Cir. 2025) ("Procedural due process requires adequate notice and a meaningful opportunity to be heard.").

Likewise, applying the injunction to this case does not violate the Ex Post Facto Clause or the judicial doctrine against retrospective laws. They apply to legislation, and not an injunction under the court's inherent authority. *See* U.S. Const., art. I, § 9 ("No Bill of Attainder or ex post facto Law shall be passed."); *Landgraf v. USI Film Products*, 511 U.S. 244, 265–67 (1994) (explaining that "retroactive statutes raise particular concerns" and that the Ex Post Facto Clause "restricts governmental power by restraining arbitrary and potentially vindictive litigation" (quoting *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981))). In any event, the district court's

application of the injunction to this case was not retroactive at all; it was prospective. If the district court had applied the injunction retroactively to this case, it would have immediately dismissed it as noncompliant because Daker's initial complaint neither included a $1,500 contempt bond with his filing nor attached a copy of the injunction order or Daker's litigation history. What the district court did instead was warn Daker that his *future* litigation in this case would be subject to the new injunction, including the requirement to post the contempt bond. And the district court gave Daker fourteen days to bring his litigation conduct into compliance with the injunction or file a motion showing that he could not do so. That is prospective, not retroactive, application.

Last, Daker points out that the similar injunctions in the Northern and Middle Districts of Georgia did not apply to cases already filed. And he says the magistrate judge's show-cause order and recommendation did not recommend applying it that way either. But, as explained above, the magistrate judge's show-cause order and recommendation *did* contemplate application to this case. And there was nothing limiting the district court's discretion to apply the injunction going forward in this case.

24-13121                Opinion of the Court                11

*2. The district court's injunction was not overbroad.*

Next, Daker argues that the injunction was substantively overbroad because it barred him from filing a motion for recusal without first posting the contempt bond. We disagree.[2]

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability . . . to carry out Article III functions," especially from litigants who "unnecessarily encroach[] on the judiciary machinery needed by others." *Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986). Thus, a litigant's right to the court "is neither absolute nor unconditional," and the right "may be counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings." *Cofield v. Alabama Public Service Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991) (quotation marks omitted).

Recognizing the competing principles, we have affirmed injunctions that directed the clerk to mark any papers submitted by a litigant as received and not to file them unless they were approved by a judge. *See Copeland v. Green*, 949 F.2d 390, 391 (11th Cir. 1991). And, specifically, we have affirmed an almost identical injunction against Daker in the Northern District of Georgia. *Daker v. Governor of Ga.*, 2022 WL 1102015, at *1–2. Daker has not shown why this case is any different.

---

[2] Despite his overbreadth argument, Daker admits that the district court had the discretion to impose the injunction.

*3. The district court abused its discretion by not considering the merits of Daker's timely motion to modify the injunction.*

Finally, Daker argues that the district court abused his discretion by dismissing this case without considering Daker's timely motion to modify the injunction. He has a point. The district court gave Daker fourteen days to deposit the contempt bond or to file a motion for modification showing he could not afford the bond. The district court's order imposing the injunction was entered on January 26, 2023. With the three additional days because the order was served on him by mail, *see* Fed. R. Civ. P. 6(d), Daker had until Monday, February 13 to post the bond or file a motion for modification.[3] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil,* 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary," we "assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Daker signed his motion for modification on February 13, 2023, so it was timely.

The district court did not rule on the merits of the motion for modification, instead "constru[ing]" it "as [a] motion[] for reconsideration" of its order imposing the injunction. The district

---

[3] February 13 is eighteen days after January 26. But "if the last day" of a period to act based on a court order "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *See* Fed. R. Civ. P. (6)(a)(1)(C).

court concluded the motion did not justify the extraordinary remedy of reconsideration under Federal Rule of Civil Procedure 59(e) because it didn't show an intervening change in law, newly available evidence, or any clear error or manifest injustice.  But the district court never considered Daker's arguments that he couldn't afford the contempt bond, so it abused its discretion by dismissing his complaint.  *See Daker v. Comm'r, Georgia Dep't of Corr.*, 820 F.3d at 1286 (holding that a district court abused its discretion when it failed to consider Daker's arguments about his indigence—which were timely under the prison mailbox rule—before dismissing his petition to proceed in forma pauperis).  Because it was timely filed at the district court's direction, the modification motion had to be considered on the merits, rather than under the limited reconsideration standard in rule 59.

## CONCLUSION

We **AFFIRM** the district court's filing injunction and the dismissal of Daker's complaint.  But we **REVERSE** the district court's order denying Daker's motion to modify the injunction and **REMAND** for consideration of that motion on the merits.  We express no opinion about how the court should decide the modification motion.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**